

FILED

APR 22 2015

SWAS

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA



***POSTED ON WEBSITE***
***NOT FOR PUBLICATION***

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 10-42050-D-7 |
| VINCENT THAKUR SINGH and MALANIE GAY SINGH | |
| Debtors. | |
| MICHAEL F. BURKART, Chapter 7 Trustee, | Adv. Pro. No. 12-2312-D 12-02312, 12-02320, 12-02368, 12-02370, 12-02371, 12-02374, |
| Plaintiff, | 12-02387, 12-02400, 12-02401, 12-02418, 12-02429, 12-02430, |
| v. | 12-02434, 12-02446, 12-02448, 12-02461, 12-02469, 12-02478, |
| PADARATH BISESSAR       12-02312 | 12-02483, 12-02486, 12-02496 |
| PING ZOU                12-02320 | |
| SHIU PRASAD             12-02368 | Docket Control No. KBP-5 |
| RIGOBERTO TORRES        12-02370 | |
| XIAOYAN WU              12-02371 | |
| ZHIBO WANG              12-02374 | DATE:  April 1, 2015 |
| ASWEN SHARMA            12-02387 | TIME:  10:30 a.m. |
| PARMILA PRASAD          12-02400 | DEPT:  D |
| VIMLA BISESSAR          12-02401 | |
| ANN THACH               12-02418 | |
| SONNY STEELE            12-02429 | |
| JAMES SINGH             12-02430 | |
| RITA REDDY              12-02434 | |
| SHARON BELOLI           12-02446 | |
| ASHWINI SINGH           12-02448 | |
| SHAOHONG WENG           12-02461 | |
| CAROLYN ALLEN           12-02469 | |
| ROSEBEL SINGH           12-02478 | |
| SANDHYA NARAYAN         12-02483 | |
| SUSHILA PRASAD          12-02486 | |
| MARIA MORA              12-02496 | |
| Defendants. | |

## <u>MEMORANDUM DECISION</u>

This is the consolidated motion of the defendants in the above-captioned adversary proceedings (the "defendants") to

dismiss certain of the plaintiff's claims and for summary
judgment and partial adjudication.   The plaintiff, who is the
trustee in the underlying chapter 7 case (the "trustee"), has
filed opposition, the defendants have filed a reply, the trustee
has filed a sur-reply, and the court has heard oral argument.
For the following reasons, the motion will be granted in part.

## I.   Introduction

First, the court would emphasize the large number of
adversary proceedings pending in this chapter 7 case, whereas
rather than moving the cases forward efficiently, both parties
have spent a substantial amount of time on issues that are
distracting, as well as those that are dispositive.   Thus, for
example, both parties have focused extensively on whether the
defendants made "loans" to the debtor or "investments" with him.
The question seems important at first glance because under
California law, on which the trustee relies for his usury claims,
a return on an investment that was not in reality a "loan" cannot
be recovered as a payment of usurious interest,[1] and also because

---

1.
Numerous transactions involving the advance of money
are structured in some form other than a loan.   In some
cases these ventures are actually investments and not
loans, in the sense that the investor expects a return
on the funds advanced but also risks a loss or receipt
of no return.   In these cases the courts reject the
claim of usury even though the investor receives a
return on investment which exceeds the maximum usury
rate.

8 Miller & Starr, Cal. Real Estate (3d ed. 2001) § 21:3, pp.
20-21 (fn. omitted).   This conclusion may be reached even in
cases where the transaction was documented by a promissory note
and thus, on its face, looked like a loan.   See Wooton v.
Coerber, 213 Cal. App. 2d 142, 146, 148 (1963); Giorgi v.
Conradi, 199 Cal. App. 2d 82, 84-86 (1962); Atkinson v. Wilcken,
142 Cal. App. 2d 246, 247-48 (1956); Fitzgerald v. Provines, 102

- 2 -

1  under both state and federal bankruptcy fraudulent transfer law,
2  a payment on an antecedent "debt" constitutes value for purposes
3  of the reasonably equivalent value defense.[2]

4       However, the court need not decide whether the investments
5  were loans or otherwise because, either way, (1) the fact of the
6  debtor's creation and operation of a Ponzi scheme placed the
7  debtor and by succession the trustee in the position of being in
8  pari delicto -- "in equal fault" -- with the defendants, and in
9  fact, at greater fault than the defendants, such that the law of
10 in pari delicto precludes any recovery by the trustee on his
11 usury claims, and (2) for each defendant who was an innocent
12 investor (or "lender"), Ninth Circuit law precludes any recovery
13 by the trustee on his constructive fraudulent transfer claims
14 except to the extent the particular defendant received payments
15 from the debtor totaling more than the total amount of the
16 defendant's monies invested with (or "loaned to") the debtor.
17 For the efficient administration of these proceedings, the court
18 will attempt in these findings and conclusions to clear as much
19 of the underbrush as possible.

20 **II.   Motion to Dismiss Usury Claims -- Insufficiency of Pleadings**

21      As to the trustee's usury claims, the defendants contend the
22 trustee's complaints fail to state a claim upon which relief can
23 be granted.  The argument is difficult to follow, but in any
24 event, it does not hold up to scrutiny and, in addition, it comes
25 too late.  As the court understands the argument, the problem

27 Cal. App. 2d 529, 536-38 (1951).

28    2.  Cal. Civ. Code § 3439.03; § 548(d)(2)(A) of the
Bankruptcy Code.

comes from the trustee's use of the words "if," "any," and "to the extent that" in his usury allegations.  For example, the first allegation in the usury claim is this:

> *If Defendant asserts that some or all of the Payments were made pursuant to a loan or other type of borrowing arrangement* between Vincent Singh and Defendant, Plaintiff alleges on information and belief that some or all of the Payments were for interest in excess of the statutory maximum of ten percent per annum, in a transaction where the loan and all interest thereon were absolutely repayable by Vincent Singh.

First Amended Complaint, filed Aug. 15, 2012 ("Compl."), at 6:5-9 (emphasis added).[3]  The defendants conclude from the highlighted language that the complaints do not "contain any language alleging that there was a loan or other type of borrowing arrangement between Singh and any of [the] defendants."  Defendants' Motion, filed Feb. 2, 2015 ("Mot."), at 7:6-7.  In the defendants' view, this language

> beg[s] the [following] question[]:  1.  Has any Defendant asserted "that some or all of the Payments were made pursuant to a loan or other type of borrowing arrangement"?  From the face of the Complaints, the answer is no.  The usury claims are based on the premise that some defendants *may* assert a lending relationship, not that such a lending relationship exists.  No such assertion that a lending relationship exists has been made.

Id. at 15:21-26.[4]

/ / /

---

3.  Page and line citations are from the trustee's amended complaint in AP No. 12-2312.  The same allegations appear in the original or amended complaints in the 20 other proceedings.  (In some of the adversary proceedings, the trustee filed amended complaints; in others, he did not.)

4.  Phrased another way, in the defendants' view, "[t]he Complaints merely speculate that a defendant might assert that there was a lending arrangement.  No such assertion has been made in the Complaints, or otherwise."  Id. at 12:15-16.

- 4 -

Similarly, the complaints allege that "*[a]ny portion of the Payments which were for interest* at a rate in excess of the statutory maximum was usurious under the laws of the state of California" (Compl. at 6:10-11, emphasis added by defendants), and from that language the defendants raise this question:

> 2. Was any portion of the Payments for interest? From the face of the Complaints, no such allegation has been made. The Complaints merely allege "*Any portion of the Payments which were for interest at a rate in excess of the statutory maximum*" was usurious. Was any portion of the Payments even for interest? The Complaints do not so allege, nor do they allege that, even if the Payments were for interest, that such Payments were for a "rate in excess of the statutory maximum."

Mot. at 15:27-16:4. The defendants conclude that

> it is impossible to discern from a reading of the Complaints exactly, or even generally, what the Trustee is trying to recover. In fact, the Complaints themselves even appear quite uncertain on their face. The uncertain language leaves the Defendants questioning whether the usury claim even has anything to do with them individually.

Id. at 14:28-15:4.

Although the use of the words "if," "any," and "to the extent that" theoretically lends a certain speculative quality to the allegations, the court does not agree that the language left the defendants in any doubt as to what the trustee was alleging or what he was seeking to recover. And even if the language did create doubt, the defendants had the opportunity to seek a more definite statement two and one-half years ago, before they filed their answers to the complaints.[5] They did not do so. Instead,

_____

5. "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading . . . ." Fed. R. Civ. P. 12(e), incorporated herein by Fed. R. Bankr. P. 7012(b).

the defendants, except one, answered each paragraph of the trustee's usury allegations separately.  (Defendant Carolyn Allen, in AP No. 12-2469, filed a pro se general denial.)  The court concludes that the "if," "any," and "to the extent that" language did not leave the defendants in any doubt that the trustee would be seeking to recover payments made by the debtor to the defendants as payments of usurious interest.

Also as part of this argument, the defendants cite certain documents the trustee served on the defendants' counsel in November and December of 2014 pursuant to the court's order establishing procedures for the amendment of complaints.  That order permitted the trustee, in lieu of filing amended complaints, to provide only revised paragraphs containing changes.  The trustee provided revised paragraphs in 18 of the adversary proceedings, under cover of a caption page with a title beginning "Excerpts," for example, "Excerpts from Amended Complaint for Avoidance and Recovery of Fraudulent Transfer; Recovery of Usurious Interest; Objection to Claim."  In 11 of those adversary proceedings, the title of the Excerpts did not include the words "Recovery of Usurious Interest," which had been included in the titles of the original or earlier amended complaints in those proceedings.  From that fact, the defendants in those 11 proceedings conclude, and seek an order confirming, that "no usury claims are included in the amended complaints against them."  Mot. at 17:7-8.

The argument is frivolous.  The court's order permitted the trustee to provide to the defendants' counsel, in lieu of amended complaints, only revised paragraphs containing the changes the

trustee would make if filing amended complaints.  It was clear
from the order that those portions of the original and earlier
amended complaints not included with the revised paragraphs were
not to be seen as deleted from the complaints, as the defendants
now suggest.  And although the trustee offers no explanation for
the discrepancies among the titles of the various excerpts, there
is no reason to conclude they were anything but accidental.
Indeed, the trustee included the prayer in his excerpts, and in
every instance where the title omitted the reference to Recovery
of Usurious Interest, the prayer included a request for the
recovery of usurious interest payments and treble damages.

### III.    Motion to Dismiss Usury Claims -- Judicial Estoppel

The defendants contend the trustee's usury claims must be
dismissed because they inherently conflict with his claim that
the debtor was running a Ponzi scheme.  They argue that because
the trustee caused the court to rely on his Ponzi scheme theory
when it granted his motions for default judgments in related
adversary proceedings and his motions for leave to amend his
complaints, the trustee is judicially estopped from claiming that
the debtor was not running a Ponzi scheme and judicially estopped
from arguing that the defendants were not investors in that
scheme.  The defendants frame their argument as follows:

> By pursuing usury theories in the face of the otherwise
> firmly established Ponzi scheme position that the
> Trustee has taken, the Trustee will, in litigating a
> usury claim, necessarily have to take a position that
> is totally inconsistent with his prior position.  The
> Trustee has obtained judicial relief based on the
> allegation that this was a Ponzi scheme and that the
> Defendants were investors.  A usury claim is based on a
> lending relationship, not an investor relationship.  A
> usury claim assumes that the Defendants, whom the
> Trustee has labeled "investors" in every other

1    pleading, suddenly become "lenders" when demanding
2    usurious interest.

3  Mot. at 18:19-25.

4        The court rejects the argument.  It is essential to the
5  application of judicial estoppel that the party to be estopped --
6  here, the trustee -- must have asserted inconsistent positions.
7  "[A] party's later position must be 'clearly inconsistent' with
8  its earlier position."  New Hampshire v. Maine, 532 U.S. 742, 750
9  (2001).  Here, the court is not persuaded that a usury claim is
10 inconsistent with a Ponzi scheme, that a "lending relationship"
11 is inconsistent with an "investor relationship," or that being an
12 "investor" is inconsistent with being a "lender."

13       The defendants cite no authority for their assumption that a
14 Ponzi scheme cannot be based on a lending relationship, and there
15 is authority to the contrary.  For example, in United States v.
16 Treadwell, 593 F.3d 990 (9th Cir. 2010), the Ninth Circuit
17 affirmed the criminal convictions of three operators of "a
18 massive four-year Ponzi scheme in which more than 1,700 investors
19 across the United States lost over $40 million."  593 F.3d at
20 992.  Although the court repeatedly characterized the victims as
21 "investors," the evidence was that they had "loaned" money to the
22 perpetrators.  Id. at 993.  The court referred to the
23 perpetrators as having told investors "the loans were 'zero
24 risk,' often paying returns of 50% interest per month and 2%
25 interest compounded monthly" (id.), and referred to the
26 "investors" as having "'loaned' over $50 million to the
27 defendants' companies."  Id. at 994.  The court repeatedly and
28 unequivocally characterized the operation as a Ponzi scheme

                              - 8 -

despite the fact that the "investments" were in the form of

"loans."

Similarly, in United States v. Sine, 493 F.3d 1021 (9th Cir.

2007), the Ninth Circuit affirmed the conviction and sentencing

of a lawyer who helped run what the Ninth Circuit characterized

as a "pyramid scheme."  493 F.3d at 1023.  The court

characterized the victims as "lending money" to the perpetrators,

and the funds received by the perpetrators as "loans" for which

the "lenders" received promissory notes and were promised between

20% and 100% interest.  See id. at 1024.  "In fact, the money

provided by these 'lenders' funded no legitimate projects.

Instead, some of the money went to repay earlier 'lenders' so

that the pyramid scheme could continue, and some ended up in the

personal coffers of [the perpetrators]."  Id.

In another example, Auza v. United Dev., Inc. (In re United

Dev., Inc.), 2007 Bankr. LEXIS 4857 (9th Cir. BAP 2007), the

Bankruptcy Appellate Panel found that the debtor was operating a

Ponzi scheme (at *29) in circumstances where

> [the debtor] could not keep up with its loan payments
> to [an original lender] and others like him, which
> resulted in borrowing additional funds from existing
> and new investors to repay previous loans.  As a result
> of UDI's insufficient assets or profits generated from
> its business activities from which to repay its
> lenders, UDI used the funds obtained from later lenders
> to repay the principal and above-market rates of return
> to earlier investors.

Id. at *2-3 (emphasis added).  There was no indication in the

decision that the "investors" were anything other than lenders.

The court concludes from these decisions that the trustee's

usury claims are not inconsistent with his position that the

debtor was operating a Ponzi scheme, and therefore, that the

1  trustee is not judicially estopped from asserting the usury

2  claims.  As discussed below, however, this does not mean the

3  usury claims hold up as against the defendants' in pari delicto

4  defense.

## IV.  Motion to Dismiss / for Summary Judgment on Usury Claims -- In Pari Delicto / Estoppel / Unclean Hands

7       The trustee does not dispute the underlying premise of the

8  defendants' in pari delicto argument, which is that if the debtor

9  would have been barred by the doctrine of in pari delicto from

10 recovering the allegedly usurious interest he paid the defendants

11 (if any), then the trustee is also barred.[6]  What he does dispute

12 is that the issue can be resolved in advance of trial.  The court

13 finds that the issue is subject to decision on a motion to

14 dismiss or a motion for summary judgment.  The court also finds

15 that the defendants have made a prima facie showing that the

16 defense of in pari delicto applies, and the trustee has failed to

---

6.   A bankruptcy trustee has the power to pursue, in general, two types of actions -- actions brought pursuant to his avoiding powers and actions based on the debtor's pre-petition rights of action that become property of the estate upon the filing of the case.  See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 356 (3rd Cir. 2001).  As to the latter, the trustee steps into the shoes of the debtor, taking such rights of action subject to any defenses a defendant would have had against the debtor, including in pari delicto.  Grayson Consulting, Inc. v. Wachovia Sec., Inc. (In re Derivium Capital LLC), 716 F.3d 355, 367 (4th Cir. 2013); Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145, 1150 (11th Cir. 2006); R.F. Lafferty & Co., 267 F.3d at 356; Sender v. Buchanan (In re Hedged-Investments Assocs.), 84 F.3d 1281, 1285 (10th Cir. 1996).  See also In re Bonham Recovery Actions, 229 B.R. 438, 442 (Bankr. D. Alaska 1999) (citations omitted) ["A bankruptcy trustee has long been able to assert a right to a usury claim which belonged to a debtor.  The trustee, however, takes the property of the estate under 11 USC § 541(a) subject to any encumbrances or blemishes that existed against the debtor. . . .  In the bankruptcy vernacular, the trustee stands in the shoes of the debtor."].

1  show there is a genuine issue of material fact that should

2  preclude summary adjudication of the issue.

3      The court will begin with the sometimes conflicting policies

4  underlying California's usury law and the doctrine of in pari

5  delicto.  The purpose of the usury law is "to protect the

6  necessitous, impecunious borrower who is unable to acquire credit

7  from the usual sources and is forced by his economic

8  circumstances to resort to excessively costly funds to meet his

9  financial needs."  Ghirardo v. Antonioli, 8 Cal. 4th 791, 804-05

10 (1994).  "The usury laws were enacted primarily to 'protect the

11 indigent, who are helpless to protect themselves in a practical

12 sense . . . .'"  O'Connor v. Televideo Sys., 218 Cal. App. 3d

13 709, 718 (1990) (citation omitted).  Thus, the policy underlying

14 the usury law is the protection of the borrower, and in

15 particular, of the impecunious and helpless borrower.

16     The doctrine of in pari delicto derives from the principle

17 that the court is not to aid either party to an illegal contract.

18         It is well established that no recovery can be had by
           either party to a contract having for its object the
19         violation of law.  The courts refuse to aid either
           party, not out of regard for his adversary but because
20         of public policy.  Where it appears that a contract has
           for its object the violation of law, the court should
21         sua sponte deny any relief to either party.

22 Smith v. California Thorn Cordage, Inc., 129 Cal. App. 93, 99-100

23 (1933) (citation omitted, internal quotation marks omitted,

24 emphasis omitted).  The Latin "in pari delicto" means "in equal

25 fault"; that is, parties who are in pari delicto are equally at

26 fault.  Kelly v. First Astri Corp., 72 Cal. App. 4th 462, 467 n.4

27 (1999).  In such a situation, the courts will leave the parties

28 as they find them, and will not award a recovery to either party.

*Id.* at 481 [on application of doctrine to illegal gambling contracts].

> There is no doubt that the general rule requires the courts to withhold relief under the terms of an illegal contract or agreement which is violative of public policy.  It is also true that . . . "when the evidence shows that . . . [a party] in substance seeks to enforce an illegal contract or recover compensation for an illegal act, the court has both the power and duty to ascertain the true facts in order that it may not unwittingly lend its assistance to the consummation or encouragement of what public policy forbids."  These rules are intended to prevent the guilty party from reaping the benefit of his wrongful conduct, or to protect the public from the future consequences of an illegal contract.

*Jacobs v. Universal Dev. Corp.*, 53 Cal. App. 4th 692, 700 (1997), quoting *Tri-Q, Inc. v. Sta-Hi Corp.*, 63 Cal. 2d 199, 218 (1965). Thus, whereas the usury law is generally intended for the protection of the borrower, the policy underlying the in pari delicto doctrine may favor the lender, and the usury law and the in pari delicto doctrine may come into conflict.

The trustee's theory is that California's usury law requires the defendants, as lenders who loaned money to the debtor, to repay to the estate the payments they received from the debtor, which the trustee claims were usurious interest payments, plus treble damages, as allowed under California's usury law.  This theory relies on the policy of protection of the borrower -- the policy underlying the usury law.  The defendants, on the other hand, contend their borrower, debtor Vincent Singh, was "in pari delicto" with the defendants; that is, of equal (or greater) fault in entering into the contracts the trustee claims called for illegal usurious interest, and thus, that the trustee, standing in the shoes of the debtor, should not be able to

recover the payments (assuming he can establish they were made on account of interest).  In contrast with the policy underlying the usury law, the in pari delicto defense in this situation would favor the lenders; that is, the defendants.

In apparent recognition of this policy conflict, earlier California cases stated that the doctrine of in pari delicto does not apply to usury claims.  For example, the trustee cites Westman v. Dye, 214 Cal. 28 (1931), in which the court stated that "under the Usury Law of this state the parties to a usurious transaction are not regarded as in pari delicto."  214 Cal. at 35; see also cases collected in Buck v. Dahlgren, 23 Cal. App. 3d 779, 787 (1972).  The problem with the trustee's reliance on Westman is that application of in pari delicto in that case would have meant penalizing a borrower who had done nothing more egregious than making the usurious interest payments voluntarily.

Previous cases under the particular constitutional provision the court was construing had held that voluntary payments of interest, even if made under a mistake of law, operated as a waiver of the borrower's right to recover payments of usurious interest or to have them applied to the principal balance of the loan.  See Westman, 214 Cal. at 32.  The Westman court rejected those cases, deciding instead it should follow cases in other jurisdictions "if the same appear equitable and right."  Id. at 37.  Thus, the court adopted a "rule allowing payments of usurious interest to be set off against the principal debt in actions brought to collect the latter."  Id. at 36.  Application of in pari delicto in that case would have prevented the borrower from having his usurious interest payments applied to the

- 13 -

1  principal balance simply because he had paid them voluntarily.

2  It might be said that, as applied to the facts of that case, the

3  policy underlying the usury law -- protection of the borrower --

4  outweighed the policy underlying the in pari delicto doctrine --

5  not assisting either party to an illegal contract.

6      The court finds that the Westman case, including the

7  statement that "the parties to a usurious transaction are not

8  regarded as in pari delicto," should have little, if any, bearing

9  on the present case, involving as it does a borrower who did far

10  more than simply paying usurious interest voluntarily.  Here, the

11  borrower, Vincent Singh, as mastermind of the Ponzi scheme,

12  solicited the loans and offered allegedly usurious interest on

13  them as an integral part of the Ponzi scheme.  More on point here

14  is Buck v. Dahlgren, 23 Cal. App. 3d 779 (1972), cited by the

15  defendants, in which the court did apply in pari delicto to a

16  usury claim.[7]  In that case, an experienced real estate developer

17  advertised for a loan, and a Swedish immigrant with no experience

18  in real estate lending responded and agreed to make the loan.

19  The developer/borrower later sued the lender to recover the

20  usurious interest the developer/borrower had paid.  The court

21

22      7.  The court quoted and relied on language in a New Jersey

23  case (see below) that used the phrase "in pari delicto"
   specifically (see Buck, 23 Cal. App. 3d at 791), but the Buck

24  court cast its actual holding in terms of estoppel.  "The
   particular and unusual equities of this case impel us to the

25  conviction that the philosophy expressed by Ryan [discussing in
   pari delicto] is most appropriately invoked here.  Accordingly,

26  we conclude the trial court properly found appellant was estoped
   from claiming the loans from respondent were usurious."  Id.

27  This court believes the two doctrines -- in pari delicto and
   estoppel -- as applied to the defense of a usury claim, are one

28  and the same.  Neither party has suggested they should be
   distinguished from one another.

- 14 -

canvassed the California cases, including <u>Westman</u>, observing that

they had focused on furthering the goal of the usury law, that

being "to penalize lenders taking advantage of unwary and

necessitous borrowers." 23 Cal. App. 3d at 787.  In furtherance

of this policy of protection, the court said,

> the courts have . . . regularly held a borrower and a
> lender are not in pari delicto in a usurious
> transaction and the lender may not assert an estoppel
> against the borrower simply because the borrower took
> the initiative in seeking the loan, knew of the
> usurious nature of the transaction, and paid usurious
> interest without protest.

<u>Id.</u> citing <u>Westman</u> among others.

The <u>Buck</u> court contrasted those cases with the facts before

it, observing that the developer/borrower had solicited the

loans, suggested and initiated the usurious terms, induced

additional loans by misrepresenting his intention of repaying

them, and concealed the true value of the land he put up as

collateral.  The court found that

> [a]t a minimum, the case before us is distinguishable
> from the foregoing cases on the basis of the fraudulent
> practices of the borrower, and on the extent of the
> involvement of [the borrower] in carrying out the
> entire scheme, as well as on the resulting substantial
> loss to the lender.  [The borrower] now seeks not only
> to retain the results of his fraud but also to mulct
> [the lender] further.

<u>Buck</u>, 23 Cal. App. 3d at 790.  Rejecting such an outcome, the

court held the developer/borrower was estoped from recovering

the usurious interest.  <u>Id.</u>  The <u>Buck</u> court cited <u>Heald v.</u>

<u>Friishansen</u>, 52 Cal. 2d 834, 837 (1959), in which the court

stated that "<u>[i]n the absence of fraud by the borrower</u>, the

parties to a usurious transaction are not in pari delicto . . .,"

and <u>Stock v. Meek</u>, 35 Cal. 2d 809, 817 (1950), stating that "[i]f

no loophole is provided for lenders, and <u>all borrowers save</u>
<u>fraudulent ones are protected</u>, usurious transactions will be
discouraged." <u>Buck</u>, 23 Cal. App. 3d at 788.

The <u>Buck</u> court also quoted from and relied on <u>Ryan v. Motor</u>
<u>Credit Co.</u>, 130 N.J. Eq. 531, 559, 23 A.2d 607, 623 (1941), and
in particular, the following:

> It is true that the penalties of the [usury] act seem
> to be directed solely to the lender, and the advantages
> or benefits . . . reserved solely for the borrowers.
> But these penalties were designed to prevent oppression
> of the weak and poor; they were not designed as rewards
> for the perfidy of the borrower.  Where no oppression
> is involved, no advantage taken by the lender of the
> borrower, the transaction being entered into with the
> deliberate purpose of defeating the [usury] statute,
> the parties are both particeps criminis and in pari
> delicto, and the rule and not the exception applies.
> Certainly it was not the intention of the legislature
> to preclude the courts, in such cases, from finding as
> a fact that the parties were in pari delicto.

<u>Buck</u>, 23 Cal. App. 3d at 790-91, quoting <u>Ryan</u>, 130 N.J. Eq. at
559, 23 A.2d at 623.  The <u>Buck</u> court also found the facts of the
<u>Ryan</u> case to be significant.  The case concerned a New Jersey law
limiting the amount any one person could owe to a small loan
company and limiting the interest rate on such loans.  In order
to circumvent the statute, the borrower, a car dealer, and the
lender, a credit company, entered into an arrangement where the
borrower obtained loans in the names of nominees, relatives, and
friends, and in names "selected at random from telephone
directories, from tombstones or taken from the thin air."  130
N.J. Eq. at 534, 23 A.2d at 611.  In those circumstances, the
court found, the borrower was not among the class of borrowers
the usury laws are intended to protect, being "not under pressure
of want or necessity" and "not susceptible to oppression," but

- 16 -

instead "criminally minded."   130 N.J. Eq. at 558, 23 A.2d at
623.   The court denied the borrower's bill for recovery of the
usurious interest he had paid (130 N.J. Eq. at 563, 23 A.2d at
625), and also denied the lender's counterclaim for the remaining
balance due on the loans.   Id.

In the present case, the debtor, Vincent Singh, has pled
guilty in federal court to wire fraud in connection with his
operation of the Ponzi scheme.[8]  The court takes judicial notice
of the debtor's plea agreement, in which the debtor admitted he
solicited investors by telling them their money would be used to
make safe loans for a high rate of return; that he did not use
all investor money in the way he had told investors he would;
that he made millions of dollars worth of payments to investors
to make it appear his business was successful in the way he had
described to investors, so as to induce them to give him even
more money; that when he made those payments to investors, he was
generally using investors' principal; that the appearance of a
successful business was false; that his false statements
convinced the investors to invest with him; and that he did not
use investor money to make hard money loans, but instead used
investor money to pay other investors.   See Ex. A to Plea
Agreement in United States v. Singh, Case No. 2:12-CR-352 (E.D.
Cal.), filed March 20, 2014.

In these circumstances, the court has no trouble concluding
that the policy underlying the usury law; namely, the protection

_____

8.   The court will discuss below the admissibility and
effect of a guilty plea and plea agreement in a Ponzi scheme
case.

- 17 -

of the needy and unwary borrower, does not apply to the debtor,
and that the policies supporting the in pari delicto doctrine do
apply to his transactions with investors, such that the debtor
would be barred by in pari delicto from recovering the allegedly
usurious interest payments, if any, if he tried to recover them.
Thus, the trustee, as successor to the debtor's interests in the
usury claims, and subject to all of the defenses the defendants
would have against the debtor, is also barred.

A California court has fairly recently applied the doctrine
of in pari delicto to bar recovery by a bankruptcy trustee in a
Ponzi scheme case.  In <u>Peregrine Funding, Inc. v. Sheppard Mullin
Richter & Hampton LLP</u>, 133 Cal. App. 4th 658, 679-82 (2005), the
court held that the bankruptcy trustee of an entity ("Peregrine")
used by its owner ("Hillman") to perpetrate a Ponzi scheme was
barred by the doctrine of unclean hands (which the court
expressly equated to the doctrine of in pari delicto (133 Cal.
App.4th at 677)) from suing the debtor's and its owner's
attorneys ("Sheppard") for negligence and misconduct that
allegedly aided in delaying discovery of the scheme.

The court first found that the doctrine applied as against
the trustee because he had succeeded to pre-petition claims of
the debtor subject to any defenses that might have been asserted
against the debtor.  <u>Id.</u> at 680.  "In the context of an unclean
hands defense, this means a bankruptcy trustee stands in the
shoes of the debtor and may not use his status as an innocent
successor to insulate the debtor from the consequences of its
wrongdoing."  <u>Id.</u>  The court went on to hold that the attorneys
would have prevailed on an unclean hands defense against the

debtor, and thus, they prevailed against the trustee.

> In this case, Peregrine and Hillman's orchestration of
> the Ponzi scheme that defrauded investors is intimately
> related to the professional malpractice claims before
> the court.  These claims are based entirely on the
> assertion that Sheppard's professional advice and
> tactics enabled Hillman and Peregrine to perpetuate
> their fraud on investors.  Moreover, Peregrine's
> participation in the fraud affects the equities between
> itself and Sheppard.  For Peregrine—the company
> plaintiffs allege was controlled by Hillman and used by
> him to operate the Ponzi scheme—to now complain of
> Sheppard's role in enabling it to commit the fraud is
> unfair, and it is precisely this sort of unfairness the
> unclean hands doctrine seeks to address.

Id. at 681.

Also recently, a California court applied the doctrine of unclean hands to require a criminal defendant, as part of a restitution award to his victim, to pay pre-judgment interest (at a non-usurious rate) as a component of his victim's economic loss despite the fact that the promissory notes documenting the victim's loans to the defendant called for interest at usurious rates.  People v. Wickham, 222 Cal. App. 4th 232, 237 (2013). The defendant/borrower relied on a civil case, Rochester Capital Leasing Corp. v. K & L Litho Corp., 13 Cal. App. 3d 697, 703 (1970), which held that the lender in a usurious transaction may recover his principal but may recover no interest at all.  The Wickham court, in essence, viewed the doctrine of unclean hands as prevailing over the purpose of the usury laws, when applied to the facts before it.

> The purpose of the usury laws is to protect the
> necessitous, impecunious borrower who is unable to
> acquire credit from the usual sources and is forced by
> his economic circumstances to resort to excessively
> costly funds to meet his financial needs. . . .  Here,
> defendant was not a poor, needy borrower who had no
> choice but to borrow money from Mr. Griffin to meet his

> financial needs.  Rather, defendant told Mr. Griffin
> that he borrowed some of the money to invest in Mexican
> gold and "lumber deals," not to buy food or pay rent.
> Further, the record shows that defendant did not intend
> the transactions as loans secured by his enforceable
> promise to repay, but rather as a means to obtain money
> from Mr. Griffin under false pretenses.  Defendant had
> a history of fraud and theft-related convictions for
> amounts more than $100,000 and, in fact, pled guilty to
> obtaining money from Mr. Griffin by false pretenses.

Wickham, 222 Cal. App. 4th at 237-38.  "The doctrine of unclean

hands prevents a party from obtaining either legal or equitable

relief when that party has acted inequitably or with bad faith

relative to the matter for which relief is sought."  Id. at 238.

The court found the case before it to be a "textbook case" for

application of the doctrine.  Id.  This court finds the present

case, in light of the debtor/borrower's operation of a Ponzi

scheme, to also be a textbook case.

     The trustee makes three arguments that, in light of the

debtor's guilty plea and plea agreement, are unpersuasive.

First, he claims the defendants "have presented no evidence on

the subject of whether Vincent Singh was in pari delicto with the

Moving Defendants."  Trustee's Opposition, filed Feb. 18, 2015

("Opp."), at 40:26-27.  Ordinarily, of course, a party moving for

summary judgment will present supporting evidence; here, the

defendants submitted no evidence for their in pari delicto

argument.  However, the court may consider not only materials

cited by the moving party but other materials in the record.

Fed. R. Civ. P. 56(c)(3), incorporated herein by Fed. R. Bankr.

P. 7056.

     In Santa Barbara Capital Mgmt. v. Neilson (In re Slatkin),

525 F.3d 805, 812 (9th Cir. 2008), the court found a debtor's

plea agreement, in circumstances substantially similar to those in this case, to be admissible evidence, under Fed. R. Evid. 807(a)(1), of his operation of a Ponzi scheme with the actual intent to defraud.  Further, the court held that

> a debtor's admission, through guilty pleas and a plea agreement admissible under the Federal Rules of Evidence, that he operated a Ponzi scheme with the actual intent to defraud his creditors conclusively establishes the debtor's fraudulent intent under 11 U.S.C. § 548(a)(1)(A) and California Civil Code § 3439.04(a)(1), and precludes relitigation of that issue.

Id. at 814.    See also AFI Holding, Inc. v. Mackenzie, 525 F.3d 700, 704 (9th Cir. 2008) ["Eisenberg's plea demonstrates the existence of fraudulent intent and a Ponzi scheme"]; La Bella v. Bains, 2012 U.S. Dist. LEXIS 76502, *10-12, 2012 WL 1976972, *4 (S.D. Cal. 2012) [taking judicial notice of plea agreement to establish actual intent to defraud in a Ponzi scheme].

    In this case, the parties have previously made the court aware of debtor Vincent Singh's guilty plea and plea agreement, and the court finds it appropriate to take judicial notice of them in connection with the trustee's usury claims, for purposes of evaluating the defendants' in pari delicto defense.  Not only are the guilty plea and plea agreement matters of which the court can and does take judicial notice but the trustee himself has submitted a declaration of an expert he has retained, who testifies to the following opinion:

> Vincent Singh was operating a Ponzi scheme from 2005 or 2006 until he filed his Chapter 7 petition in August 2010.  All payments from and to investors during that period which were for "investment" purposes were payments in furtherance of the Ponzi scheme.

/ / /

1  G. McHale Decl., filed Feb. 18, 2015 ("McHale Decl."), at 2:23-

2  26.

3       In both an action to recover a fraudulent transfer based on

4  actual intent to defraud and in an action to recover usurious

5  interest, in which the borrower is alleged to have acted

6  fraudulently, the fact of the debtor/borrower's operation of a

7  Ponzi scheme is highly relevant and probative.  Indeed, "the mere

8  existence of a Ponzi scheme is sufficient to establish actual

9  intent to defraud."  <u>Donell v. Kowell</u>, 533 F.3d 762, 770 (9th

10  Cir. 2008); <u>AFI Holding</u>, 525 F.3d at 704.  Simply put, the

11  debtor's guilty plea and plea agreement are evidence of conduct

12  by the debtor that took him completely outside the class of

13  borrowers the usury laws are meant to protect such that he would

14  clearly be estopped to recover from the defendants.  The trustee,

15  by succession to the debtor's claims, is also estopped.  The

16  trustee's expert's declaration also supports this conclusion.

17       Second, and related to his first argument, the trustee

18  contends the validity of an in pari delicto defense should not be

19  decided at the pleading stage.  Thus, he states:

20       [W]hile it might be possible to conclude that the
         parties to a usurious transaction are <u>in pari delicto</u>,
21       any decision to bar a usury claim would depend on the
         facts.  It does not happen as a matter of law.  The
22       bottom line is that, like any other factual defense, it
         must be resolved on a factual basis.

23

24  Opp. at 41:22-24.  Again, the trustee misses the point that there

25  is evidence of the existence of a Ponzi scheme, in the form of

26  the debtor's guilty plea and plea agreement, which the trustee

27  has not refuted.  Indeed, the trustee himself has asserted in his

28  complaints that the debtor was running a Ponzi scheme, and has

- 22 -

1  offered expert testimony to that effect.

2      In <u>Terlecky v. Hurd (In re Dublin Sec.)</u>, 133 F.3d 377 (6th

3  Cir. 1997), the bankruptcy trustee opposed a motion to dismiss

4  his complaint on the ground that the in pari delicto defense

5  required a more intensive fact-finding effort.  The court

6  affirmed the district court's granting of the motion, noting that

7  the trustee had admitted in his complaint that

8          the debtors' own actions were instrumental in
           perpetrating the fraud on the individuals choosing to
9          invest in the Dublin Securities schemes.  [The trustee]
           concedes, for example, that the debtors intentionally
10         defrauded their investors.  Such purposeful conduct
           thus establishes conclusively that the debtors were at
11         least as culpable as the defendants in this matter.

12  133 F.3d at 380.[9]

13      The trustee cites Fed. R. Civ. P. 8(d), arguing he is

14  entitled to assert inconsistent theories of the case, one of

15  which is that the debtor was running a Ponzi scheme and the

16  other, that the defendants made usurious loans to the debtor.

17  (As discussed above, the court does not find these theories to be

18  inconsistent.)  The problem is that Rule 8 states the general

19  rules for pleading, whereas the defendants' motion is one to

20  dismiss the case for failure to state a claim, but also for

21  summary judgment or summary adjudication of issues.  There being

22  conclusive evidence that the debtor was running a Ponzi scheme

23  with the actual intent to defraud, it was incumbent on the

24  _____

25      9.  And in <u>Peregrine Funding</u>, the court stated that
    "[a]lthough plaintiffs are correct that application of this
26  defense generally rests on questions of fact, this does not mean
    the defense can never prevail at the pleading stage or on a
27  motion to strike.  Where, as here, a plaintiff's own pleadings
    contain admissions that establish the basis of an unclean hands
28  defense, the defense may be applied without a further evidentiary
    hearing."  133 Cal. App. 4th at 681 (citation omitted).

- 23 -

trustee to come forward with affirmative evidence to show the

existence of genuine issues of fact for trial.  <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 256-57 (1986).  As regards the

defendants' in pari delicto defense, he has not done so.

Finally, the trustee has suggested the defendants were part

of a conspiracy with the debtor to evade taxes and thereby to

defraud the IRS.  Thus, he argues:

> One final reason to deny the Moving Parties'
> in pari delicto defense at this stage is the
> question of how to deal with the fact that
> the Moving Parties may themselves have
> unclean hands.  The evidence at trial may
> show that Vincent Singh was engaged in a
> Ponzi scheme, but what if the Moving Parties
> were complicit with Vincent Singh in a scheme
> to defraud the IRS?  Should they be estopped
> to raise the "in pari delicto" defense?  This
> issue is not presently before the Court, and
> Plaintiff will not attempt to suggest a
> resolution.

Opp. at 42:7-12.  The court believes the issue is before the

court.  The defendants raised a legitimate in pari delicto

defense in their motion, and the debtor's guilty plea and plea

agreement demonstrate the applicability of the defense.  Thus,

the trustee had the burden to demonstrate the existence of

genuine issues of fact for trial concerning the defense.

The trustee claims it is undisputed that the defendants did

not pay taxes on the payments they received from the debtor,

failed to keep records of those payments, and claim not to know

how the amounts of the payments were calculated.  He also claims

the debtor did not file 1099's showing the payment of interest

and did not provide statements of amounts invested, amounts

earned, amounts paid, or amounts due.  Thus, the trustee

concludes, "[e]verything was designed to fly under the radar of

1    the IRS, so that interest payments received by the Moving

2    Defendants would not be taxed." Opp. at 19:14-16.  He

3    acknowledges that his evidence is "completely circumstantial"

4    (id. at 19:9), but cites case law suggesting a conspiracy may be

5    proven by circumstantial evidence and inferences.

6        The trustee has submitted no evidence, and has not even

7    suggested, that the payments the defendants received from the

8    debtor were taxable.  The defendants claim they were not, and the

9    court, of course, has no knowledge or understanding on this issue

10   one way or the other.  However, it was up to the trustee to

11   present his evidence in response to the motion, and he has failed

12   to do so.  "A scintilla of evidence or evidence that is merely

13   colorable or not significantly probative does not present a

14   genuine issue of material fact." United Steel Workers of America

15   v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989).

16   Discovery in these adversary proceedings has closed after two and

17   one-half years; thus, the trustee would be hard-pressed to argue

18   he needs more time to develop his evidence.[10]

19       Further, even evidence that the defendants should have paid

20   taxes on the payments they received from the debtor would not

21   change the outcome as it would still leave the debtor, and hence

22   the trustee, subject to the in pari delicto defense.

23           A court will neither aid in the commission of a fraud
             by enforcing a contract, nor relieve one of two parties
24           to a fraud from its consequences, where both are in
             pari delicto.  The doctrine closes the doors of a court
25           of equity to one tainted with inequitableness or bad

26   ───────────────────────

27       10.  The trustee would also have trouble claiming he was
     surprised by the defendants' arguments, as, with one exception
28   (Carolyn Allen in AP No. 12-2469), they included in pari delicto
     in their answers as an affirmative defense.

                              - 25 -

1  faith relative to the matter in which he seeks relief,
2  however improper may have been the behavior of the
   defendant.

3  Jacobs, 53 Cal. App. 4th at 699 (citations omitted).

4      For the reasons stated, the court concludes that the

5  defendants have made a prima facie showing that the defense of in

6  pari delicto applies, and the trustee has failed to show there is

7  a genuine issue of material fact that should preclude summary

8  adjudication of the issue.  Accordingly, the court will grant

9  summary judgment in favor of the defendants and against the

10 trustee on the trustee's usury claims.[11]

11
   **V.   Summary Adjudication on Actual Fraudulent Transfer Claims**
12 **(But Not Defenses Thereto)**

13     As discussed above, based on the debtor's guilty plea and

14 plea agreement and the McHale declaration, the court finds there

15 is conclusive evidence that the debtor was operating a Ponzi

16 scheme.  That evidence, in turn, "is sufficient to establish

17 actual intent to defraud."  Donell, 533 F.3d at 770; AFI Holding,

18 525 F.3d at 704.  In fact, that evidence "conclusively

19 establishes the debtor's fraudulent intent under 11 U.S.C. §

20 548(a)(1)(A) and California Civil Code § 3439.04(a)(1), and

21 precludes relitigation of that issue."  Slatkin, 525 F.3d at 814.

22     The court therefore will grant partial summary adjudication

23 in favor of the trustee and against the defendants on the

24

25     11.  The court is not dismissing the claims for failure to
   state a claim upon which relief can be granted, because the court
26 has rejected the defendants' grounds for that relief
   (insufficiency of pleadings and judicial estoppel).  Because the
27 issue on which the court bases its ruling -- in pari delicto --
   depends on matters outside the pleadings, dismissal under Rule
28 12(b)(6) is not appropriate.  See Fed. R. Civ. P. 12(d),
   incorporated herein by Fed. R. Bankr. P. 7012(b).

trustee's claims for avoidance and recovery of actual fraudulent transfers under both § 548(a)(1)(A) of the Bankruptcy Code and Cal. Civ. Code § 3439.04(a)(1), to the extent of determining, pursuant to Fed. R. Civ. P. 7056(g), incorporated herein by Fed. R. Bankr. P. 7056, that Vincent Singh's operation of a Ponzi scheme with the requisite fraudulent intent is not genuinely in dispute and will be treated as established in these adversary proceedings.

The court recognizes that the defendants have not sought a ruling on the actual fraudulent transfer claims except to seek partial summary adjudication on the issue of what they refer to as the value component of their good faith defense.  However, pursuant to Fed. R. Civ. P. 56(f), incorporated herein by Fed. R. Bankr. P. 7056, the court may, independent of the motion, grant summary judgment for a non-moving party or consider summary judgment on its own after identifying for the parties the issues it considers to be not genuinely in dispute.  The rule requires the court to give notice to the parties and a reasonable time to respond.  Here, the court's findings on the issue of Vincent Singh's operation of a Ponzi scheme and his actual intent to defraud are essential to the court's ruling on the in pari delicto defense to the trustee's usury claims.  Thus, the court considers that the issues are fairly in play on this motion.  To be clear, the court is making no findings about the defendants' defenses to the trustee's actual fraudulent transfer claims except, as discussed below, on the issue of whether the defendants took the transfers for value, for purposes of Bankruptcy Code § 548(c) and Civil Code § 3439.08(a).

## VI.   Motion to Dismiss / for Summary Judgment
## on Constructive Fraudulent Transfer Claims

With the above findings and conclusions concerning the trustee's actual fraudulent transfer claims, there appears to be no need for the trustee to pursue his constructive fraudulent transfer claims at this time, because both the evidentiary burden and the element of damages are more favorable to the trustee, in all respects, under the actual fraudulent transfer statutes. Under those statutes, Bankruptcy Code § 548(a)(1)(A) and Civil Code § 3439.04(a)(1), the trustee is entitled to avoid and recover the full amount of the payments the debtor made to the defendants.   To defeat the trustee's claims, it will be the defendants' burden to demonstrate they took their payments for value and in good faith, under Bankruptcy Code § 548(c) and Civil Code § 3439.08(a).[12]  They will have to demonstrate their good faith under an objective standard.  Jobin v. McKay (In re M & L Bus. Mach. Co.), 84 F.3d 1330, 1338 (10th Cir. 1996); In re Agricultural Research & Tech. Group, Inc., 916 F.2d 528, 535-36, 539 (9th Cir. 1990).  And if they meet that burden, they will be able to retain only the payments they received that total up to the amount they paid to the debtor.  AFI Holding, 525 F.3d at 709; see also Donell, 533 F.3d at 770; In re United Energy Corp., 944 F.2d 589, 595, n.6 (9th Cir. 1991).

/ / /

---

12.  As discussed below, the court concludes that, as to the payments received up to the total amounts of their investments, the defendants have demonstrated they held restitution claims against the debtor which were satisfied by the payments received, and therefore, the defendants have satisfied the "for value" component of that test.

In contrast, under the constructive fraudulent transfer statutes, Bankruptcy Code § 548(a)(1)(B) and Civil Code § 3439.04(a)(2), the trustee would have to demonstrate, as part of his case-in-chief, that the debtor received less than a reasonably equivalent value in exchange for the transfers.[13]  As discussed below, as to the payments made to the defendants up to the total amounts of their investments, the trustee will be unable to make that showing.  Thus, all that remains for the trustee under his constructive fraudulent transfer claims is a recovery to the extent he can demonstrate that particular defendants received more than the totals of their investments.

As explained below, the court concludes that for purposes of the trustee's constructive fraudulent transfer claims, the trustee will be able to demonstrate the debtor received less than reasonably equivalent value for the transfers to each particular defendant only to the extent the defendant was a "net winner." As for the payments received up to the full amount of the defendant's investment, those payments were made in satisfaction of the defendant's restitutions claims against Vincent Singh.

---

13.  The Donell court described the distinctions as follows:

Under the actual fraud theory, the receiver may recover the entire amount paid to the winning investor, including amounts which could be considered "return of principal."  However, there is a "good faith" defense that permits an innocent winning investor to retain funds up to the amount of the initial outlay.  Under the constructive fraud theory, the receiver may only recover "profits" above the initial outlay, unless the receiver can prove a lack of good faith, in which case the receiver may also recover the amounts that could be considered return of principal.

Donell, 533 F.3d at 771 (citations omitted).

- 29 -

"It is well-established that the innocent investor in a Ponzi scheme gives reasonably equivalent value to the debtor when he receives payments in satisfaction or partial satisfaction of his restitution claim against the debtor." Donell, 533 F.3d at 772; AFI Holding, 525 F.3d at 708; United Energy, 944 F.2d at 595.

> In a suit for damages, the . . . payments given to the defrauded investors would be deemed to partially satisfy or release fraud or restitution claims. Satisfaction of such claims would constitute value given for the receipt of the . . . payments within the meaning of section 548(d)(2)(A) or the comparable California provision.

In re United Energy Corp., 102 B.R. 757, 763 (9th Cir. BAP 1989).

The trustee contends the defendants did not have or may not have had restitution claims against Vincent Singh because (1) the underlying contracts between them, as evidenced by the promissory notes, called for usurious interest, and thus, were illegal and unenforceable; and (2) the transactions were part of a conspiracy to evade taxes, and were illegal and unenforceable for that reason as well. Thus, the trustee claims, "he has presented evidence from which the Court can infer that [the defendants] were not innocent." Opp. at 35:3-4.

> [T]he theoretical rescission/restitution claims that might otherwise form the basis for a "debt" that could be offset against the payments to the Moving Defendants simply are not available when they were the product of usurious transactions or a conspiracy to evade taxes. The net result will be that Plaintiff will be able to prove that the Moving Defendants did not receive reasonably equivalent value in exchange for the payments they received—because no legitimate, enforceable debt was paid by means of the payments to the Moving Defendants.

Id. at 25:15-21.

The court disagrees. The trustee has cited no authority, and the court has found none, for the proposition that either an

1  investor's knowledge that he would be receiving usurious interest
2  or his intention not to pay taxes legitimately owed on the
3  payments he receives on his investment takes the investor in a
4  Ponzi scheme outside the "innocent investor" category for
5  determining whether he was defrauded into making his investment.[14]
6  Instead, importantly, the restitution claims arose out of the
7  fact of the Ponzi scheme itself and the defendants' investments
8  in it -- they are claims a defrauded investor has against the
9  perpetrator, and they arise at the time the investor is defrauded
10  by the perpetrator; that is, at the time the investor makes his
11  investment.

12      Thus, in United Energy, the court found that "the investors
13  were duped into buying the solar modules.  They clearly had
14  claims for rescission and restitution which arose when they
15  bought the modules."  United Energy, 994 F.2d at 596.  Relying on
16  United Energy, the AFI Holding court found that

17      the record demonstrates that Eisenberg's operation was
        a Ponzi scheme before Mackenzie provided his principal
18      "investment," and thus well before the transfers were
        made from AFI to Mackenzie.  Because of this, Mackenzie
19      acquired a restitution claim at the time he bought into
        Eisenberg's Ponzi scheme, just as the investors in
20      United Energy acquired a restitution claim at the time
        they bought their solar modules.
21

22  AFI Holding, 525 F.3d at 708.

23  ───────────────────────
24      14.  In any event, as discussed above in connection with the
    in pari delicto defense, the trustee has not presented sufficient
25  evidence for the court to infer the existence of either a
    conspiracy or an intent to evade taxes legitimately owed.  As for
26  the promissory notes calling for usurious interest, there is no
    evidence they were prepared or their terms suggested by anyone
27  other than Vincent Singh.  On the facts presented on these issues
    in opposition to this summary judgment motion, the trustee has
28  not defeated the conclusion that the defendants were defrauded by
    Vincent Singh into making their investments.

The cases make clear that restitution claims are, to use the trustee's word, "available" to every defendant who was <u>defrauded into</u> investing in a Ponzi scheme.  In order to defeat a particular defendant's restitution claim, the trustee must show the defendant was not defrauded into investing; that is, the trustee must show the defendant knew about the Ponzi scheme at the time he made his investment.  Thus, in <u>United Energy</u>, the court acknowledged that

> [i]n recognizing these claims for rescission and restitution, we assume that the investors had no knowledge of the fraud the debtors were perpetrating.  If investments were made with culpable knowledge, all subsequent payments made to such investors within one year of the debtors' bankruptcy would be avoidable under section 548(a)(2), regardless of the amount invested, because the debtors would not have exchanged a reasonably equivalent value for the payments.

944 F.2d at 596, n.7.  Here, the trustee simply has not alleged in his complaints, and has not produced any evidence to demonstrate, that any of the defendants actually knew about Vincent Singh's fraudulent scheme and participated in it.

All the parties should keep in mind that, in the court's view, the test for determining whether one was an "innocent" investor, such that he acquired a restitution claim the payment of which constituted reasonably equivalent value given to the debtor in exchange for the payment, is entirely distinct from the test for determining whether an investor acted "in good faith" for purposes of the defendant's "for value and in good faith" defense under Bankruptcy Code § 548(c) and Civil Code § 3439.08(a).  The distinction is best described in <u>Jobin</u>, <u>supra</u>.  First, the court held that the appropriate standard for measuring good faith, under § 548(c), is an objective standard (84 F.3d at

1338); that the defendant has the burden of proving good faith

(id.); and that, considering the facts,

> it was not clearly erroneous for the bankruptcy court
> to conclude that a reasonably prudent investor in Mr.
> McKay's [the defendant's] position should have known of
> M & L's [the debtor's] fraudulent intent and impending
> insolvency and that he was therefore not entitled to
> the good faith defense established by § 548(c).

Id. at 1338-39.

Based on those conclusions, the trustee in the case, speaking with regard to the same conduct of the same defendant, tried to equate good faith under § 548(c) with the reasonably equivalent value element of her case-in-chief under § 548(a)(1)(B) (the constructive fraudulent transfer statute). Thus, the trustee argued that "because Mr. McKay lacked good faith, he did not have a colorable restitution claim against M & L, and, as a result, M & L's payments to him did not provide M & L with 'reasonably equivalent value' by reducing such a claim." Jobin, 84 F.3d at 1341. The trustee claimed the same standard should be used under both subsections, § 548(c) and § 548(a)(1)(B), and that because the court had used an objective standard to defeat the defendant's good faith defense under § 548(c), an objective standard should also be used to defeat the defendant's restitution claim for purposes of determining the trustee's case-in-chief under § 548(a)(1)(B).

The court disagreed. First, the court observed that "although § 548(c) uses the term 'good faith,' § 548(a)(2) [(a)(1)(B)] does not. Instead, § 548(a)(2) [(a)(1)(B)] refers to 'value.'" Jobin, 84 F.3d at 1341. The court then framed the question, for purposes of § 548(a)(1)(B) [reasonably equivalent

- 33 -

value for purposes of the trustee's case-in-chief], as "whether an individual investor who should have known of a fraudulent scheme but did not have actual knowledge has a colorable restitution claim to recover his investment." Id. In other words, the good faith test under § 548(c) is whether, under the circumstances viewed objectively, the defendant should have known of the fraudulent scheme, whereas the test under § 548(a)(1)(B) is whether the defendant had actual knowledge of the scheme.[15] Because the evidence showed the defendant "was fraudulently induced to invest in M & L, [and] in light of the bankruptcy court's factual finding that he did not have actual knowledge of the fraud," the court concluded he had a restitution claim that was reduced by the amounts of the payments he received from the debtor, such that the debtor received reasonably equivalent value for those payments. Id. at 1342.

Given (1) the conclusive evidence that Vincent Singh was operating a Ponzi scheme, (2) the trustee's position that "all payments from and to investors . . . which were for 'investment'

15.    The Jobin court itself did not use the word "subjective" or the term "good faith" when analyzing the "reasonably equivalent value" question under § 548(a)(1)(B), although the trustee had tried to frame the question as a contest between "two standards of good faith--an objective one under § 548(c) and a subjective one under § 548(a)(2) [(a)(1)(B)]." 84 F.3d at 1341. In this court's view, use of the term "good faith" when referring to the trustee's burden of proving "less than reasonably equivalent value" under § 548(a)(1)(B) improperly conflates two distinct tests into the same test, and thereby creates considerable confusion. Similarly, reference to a "subjective" test tends to suggest the question is one of good faith when it is not. For purposes of determining whether the defendant in a Ponzi scheme case had a restitution claim, the satisfaction of which qualified as "reasonably equivalent value" under § 548(a)(1)(B), the question is simply whether he had actual knowledge of the scheme at the time he invested in it.

purposes were payments in furtherance of the Ponzi scheme"
(McHale Decl., at 2:23-26), and (3) the trustee's failure to
submit any evidence that any defendant had actual knowledge of
the fraudulent scheme, the court concludes that the defendants
acquired restitution claims against Vincent Singh at the time
they made their investments, that those claims were
proportionately reduced by the payments they received from him,
and that the satisfaction of their claims for restitution
constituted reasonably equivalent value for the payments they
received.  The trustee has failed to demonstrate that a genuine
issue of fact as to any of these findings and conclusions remains
to be tried.

    As the defendants note, the Ninth Circuit has

> [found] no reason, in statute or case law, to treat
> "reasonably equivalent value" differently for each of
> the Code's provisions.  Both the prima facie case for
> constructively fraudulent transfers, under §
> 3439.04(a)(2), and the affirmative defense to actually
> fraudulent transfers, under § 3439.08, require a
> determination of whether "reasonably equivalent value"
> was transferred from the transferee to the debtor.

AFI Holding, 525 F.3d at 707.  Thus, this ruling determines the
issue for both purposes, and the trustee will only be successful
in recovering against "net winners."

### VII.   Remaining Issues

    Finally, the defendants contend the trustee's complaints
fail to state a claim upon which relief can be granted because
"they do not identify even one dollar that was allegedly received
by an investor in excess of the amount of their principal
investment."  Mot. at 26:18-19.  In other words, the trustee
failed to identify defendants who were "net winners" and to state

by how much they were net winners.  The court does not agree that the trustee was required to be that specific in the complaints. Instead, the court finds sufficient for pleading purposes the trustee's allegation that the debtor received less than a reasonably equivalent value in exchange for the payments, and the motion to dismiss the constructive fraudulent transfer claims will be denied.  The trustee will have the opportunity later to demonstrate, if he can, that particular defendants were "net winners," and thus, under the <u>Donell</u> line of cases, that to the extent the payments they received from Vincent Singh exceeded the total of their investments, they did not give reasonably equivalent value in exchange for those payments.  .

Although the court concludes the defendants gave reasonably equivalent value for the payments they received from the debtor, up to the total amount of their investments, this ruling leaves undecided the issue of whether the defendants received the payments from the debtor in good faith, so as to have a defense to the trustee's fraudulent transfer claims based on actual fraud; that is, the trustee's claims brought under Bankruptcy Code § 548(a)(1)(A) or Civil Code § 3439.04(a)(1).  The defendants have indicated they will raise this contention at trial or by separate motion; it is not a part of their present motion.

As for the trustee's claims based on constructive fraud; that is, his claims under Bankruptcy Code § 548(a)(1)(B) or Civil Code § 3439.04(a)(2), the court will have no need to reach the issue of the defendants' good faith.  As to the payments received by the defendants up to the total amounts of their investments,

as explained above, the court has already found the defendants had valid restitution claims that were satisfied, in whole or in part, by those payments.  Thus, the trustee will be unable to demonstrate that Vincent Singh received less than a reasonably equivalent value in exchange for the payments.[16]  That is, the trustee will be unable to prevail on his case-in-chief, and the court will have no need ever to reach the defendants' defenses.

As to the payments received by the defendants over and above the total amounts of their investments, those payments were not made in satisfaction of a restitution claim, that claim having already been satisfied; thus, the defendants did not take those payments "for value."  As the test under Bankruptcy Code § 548(c) and Civil Code § 3439.08(a) is a two-part test -- the defendant must have taken the transfers "for value and in good faith" -- the defendants will be unable to satisfy the "for value" component; thus, there will be no need for the court to reach the good faith component of the defense.

Finally, the court wishes to clarify that certain documents filed by the parties were not overlooked.  First, the court has paid virtually no heed to the defendants' statement of undisputed facts and conclusions of law or the trustee's response to it because the statement is essentially an itemization of the procedural history of the adversary proceedings, along with a restatement of some of the defendants' arguments; it is not a

---

16.  "Up to the amount that 'profit' payments return the innocent investor's initial outlay, these payments are settlements against the defrauded investor's restitution claim. Up to this amount, therefore, there is an exchange of 'reasonably equivalent value' for the defrauded investor's outlay."  Donell, 533 F.3d at 777.

statement of material factual issues remaining in dispute.

Second, the court has reviewed the trustee's sur-reply and agrees that the defendants have taken out of context his statement that "Moving Defendants gave additional money to Vincent Singh after receiving amounts that were less than what they had previously invested." Opp. at 26:11-13. The court concludes the trustee has not admitted the defendants were "net losers." The defendants have offered no evidence on this issue, and it remains a disputed material factual issue.

Finally, the defendants have made blanket evidentiary objections to the supporting declaration of the trustee's attorney and to virtually all the exhibits submitted by the trustee. The court has given little weight to those documents in this decision, finding them to be of little persuasive value; thus, the court finds no reason to take the time to rule on the evidentiary objections, which are conclusory in any event.

### VIII.  Conclusion

To conclude, the court will grant the following relief:

(1) The court will grant summary judgment in favor of the defendants and against the trustee on the trustee's usury claims;

(2) The court will grant partial summary adjudication in favor of the trustee and against the defendants on the trustee's claims for avoidance and recovery of actual fraudulent transfers under both § 548(a)(1)(A) of the Bankruptcy Code and Cal. Civ. Code § 3439.04(a)(1), to the extent of determining, pursuant to Fed. R. Civ. P. 7056(g), incorporated herein by Fed. R. Bankr. P. 7056, that Vincent Singh's operation of a Ponzi scheme with the requisite fraudulent intent is not genuinely in dispute and will

be treated as established in these adversary proceedings;

(3) The court will grant partial summary adjudication in favor of the defendants and against the trustee on the trustee's claims for avoidance and recovery of constructive fraudulent transfers under both § 548(a)(1)(B) of the Bankruptcy Code and Cal. Civ. Code § 3439.04(a)(2), to the extent of determining, pursuant to Fed. R. Civ. P. 7056(g), incorporated herein by Fed. R. Bankr. P. 7056, that the following facts are not genuinely in dispute and will be treated as established in these adversary proceedings:  that the defendants acquired restitution claims against Vincent Singh at the time they made their investments; that those claims were proportionately reduced by the payments they received from him; and that the satisfaction of their claims for restitution constituted reasonably equivalent value for the payments they received, up to the total amount of their investments with Vincent Singh; and

(4) The court will grant partial summary adjudication in favor of the defendants and against the trustee on the defendants' defenses under Bankruptcy Code § 548(c) and Civil Code § 3439.08(a) to the trustee's claims for avoidance and recovery of actual fraudulent transfers under Bankruptcy Code § 548(a)(1)(A) and Civil Code § 3439.04(a)(1), to the extent of determining, pursuant to Fed. R. Civ. P. 7056(g), incorporated herein by Fed. R. Bankr. P. 7056, that the following facts are not genuinely in dispute and will be treated as established in these adversary proceedings:  that the defendants acquired restitution claims against Vincent Singh at the time they made their investments; that those claims were proportionately reduced

by the payments they received from him; and that the satisfaction of their claims for restitution constituted reasonably equivalent value for the payments they received, up to the total amount of their investments with Vincent Singh.

Except to the extent expressly set forth above, the motion is denied.  The court will issue an order and partial judgment.

Dated: April 22, 2015                    *Robert Bardwil*
                                         ROBERT S. BARDWIL
                                         United States Bankruptcy Judge